IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Drew Farms, a South Carolina General Partnership, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 4:08-cv-00131-TLW |
| Preston Farms, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

# ORDER

This action stems from a dispute over a contract for the purchase of popcorn between Drew Farms ("plaintiff"), a South Carolina farm, and Preston Farms, LLC ("defendant"), an Indiana popcorn grower and processor. In 2007, the parties entered into a contract which provided that the plaintiff would plant one-hundred and fifty (150) acres of popcorn seed provided by the defendant, and that the defendant would then purchase all of the plaintiff's popcorn crop at a contracted price. In August of 2007, the plaintiff began delivery of the harvest, which consisted of sixteen truckloads of popcorn. During the unloading of the popcorn at the defendant's Indiana facilities, the plant manager noticed a potential problem with the crop. At this point, the defendant's employees attempted to segregate the various truckloads of popcorn into several different storage bins, apparently in an effort to mimic the manner in which the popcorn had been stored at the plaintiff's farm prior to shipment. Later tests revealed that several truckloads of the popcorn crop contained unacceptable levels of Aflatoxin, a toxic fungus that makes popcorn unfit for human consumption.

Ultimately, three truckloads of popcorn were purchased at the contracted rate, while thirteen loads were sold at a reduced rate for use as livestock feed.[1]

The plaintiff filed this action in the Court of Common Pleas for Florence County, South Carolina on December 21, 2007, seeking to recover damages on the contract between the parties. This action was removed to this Court on January 15, 2008. (Doc. #1). The defendant filed an answer and counterclaim on January 15, 2009. (Doc. #4). The defendant filed a motion for summary judgment on March 12, 2009. (Doc. #17). The plaintiff filed a response in opposition on April 13, 2009. (Doc. #23). This Court held a hearing on this matter on November 10, 2009. The Court has considered the motions, memoranda, and arguments of the parties, and this matter is now ready for disposition.

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the defendant is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the defendant bears the initial responsibility of informing this Court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires the defendant to identify those portions of the "pleadings, depositions, answers to

---

[1]The defendant asserts that it initially attempted to purchase an additional four truckloads of popcorn which contained elevated levels of Aflatoxin but were still fit for human consumption. However, as time progressed the Aflatoxin levels in these four truckloads of popcorn rose to the point that the popcorn was no longer fit for human consumption. These four truckloads were included in the thirteen total truckloads that were sold as livestock feed.

interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the defendant bears this initial responsibility, the plaintiff, as nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 317. In satisfying this burden, the plaintiff must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the plaintiff must produce evidence on which a jury could reasonably find in its favor. See Anderson, 477 U.S. at 252.

In considering the defendant's motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the plaintiff as nonmoving party. See Miltier v. Beorn, 869 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

**a. Breach of Contract**

The defendant has asserted that there was a proper basis for failing to perform under the contract because the plaintiff tendered nonconforming goods, as several shipments of the popcorn contained dangerous levels of Aflatoxin in excess of that allowed by the contract. The defendant asserts that it properly rejected the non-conforming truckloads of popcorn, or, in the alternative, that it properly revoked acceptance of the non-conforming popcorn.

The Court notes, however, that several important factual determinations underlie the issue of whether the crops were rejected or whether acceptance was properly revoked. As an initial matter, a jury must determine whether the goods were, in fact, non-conforming. The source of the Aflatoxin infection is at issue, as the parties dispute whether the toxin was introduced at the plaintiff's farm or, at least in part, at the defendant's facility. While Aflatoxin normally attacks popcorn while the crop is in the soil, the parties do not dispute that a small number of infected kernels can contaminate a much larger quantity of popcorn. Evidence asserted show tests confirm that multiple shipments arrived at the defendant's facility with Aflatoxin contamination, a fact that suggests that the contamination occurred at the plaintiff's farm or during transit. However, evidence in the record also suggests that the defendant experienced an outbreak of Aflatoxin at its facility several months before the plaintiff delivered its popcorn crop. Other evidence suggests that the Aflatoxin contamination spread significantly after the popcorn was placed into storage at the defendant's facility. Thus, it is unclear at what point the Aflatoxin contaminants were introduced to the popcorn crop, and whether there were multiple sources of contamination. Based on the record before this Court, it will be up to the jury to determine whether, and to what extent, the plaintiff delivered nonconforming goods to the defendant.

Further, there is an issue of fact as to whether the defendant acted in a commercially reasonable manner once it was determined that there was a potential problem with the popcorn shipments. The defendant has noted that once its employees determined that there was a problem with the popcorn crop, they then attempted to segregate the truckloads into several different storage bins in an effort to mimic the manner in which the popcorn was stored on the plaintiff's farm. The defendant's employees accomplished this task by asking the truck drivers to recount from which

storage bin on the plaintiff's farm their loads had been taken. The defendant also notes that the truck drivers appreciate the ability to make a quick "turnaround," and that the defendant's employees attempted to isolate the contaminated popcorn to the best of their ability given the limited information they were provided.

However, the plaintiff points out that the defendant had an onsite laboratory and the ability to test the Aflatoxin level of each truckload in as little as two hours. The plaintiff asserts that a simple test would have prevented the commingling of any contaminated popcorn with uninfected popcorn. Test results for samples that were taken from eleven individual truckloads shortly after the trucks arrived at the defendant's facility indicate that only three of the eleven truckloads tested contained unacceptable levels of Aflatoxin. Other test results show that after commingling, the Aflatoxin appears to have spread considerably throughout the popcorn crop. Ultimately, thirteen of the sixteen total loads delivered were found to have unacceptable levels of Aflatoxin. Thus, the record provides evidence from which a jury could conclude that there was some spread of the Aflatoxin as a result of the commingling of contaminated popcorn with uninfected popcorn. Based on the foregoing facts, the Court concludes that there are a number of factual issues surrounding the parties' performance under the contract which must be answered at trial, and that the record does not support the entry of summary judgment on the plaintiff's breach of contract claim.

**b. Use of Unapproved Chemicals**

The defendant has also moved for summary judgment on the ground that the plaintiff used two unapproved agricultural chemicals on the popcorn crop which constituted a breach of the

contract between the parties.[2] However, the record before the Court contains a clear issue of fact as to the use of these chemicals. The defendant first asserts that the plaintiff used the insecticide Orthene 75 S on its crop. However, the plaintiff denies that such chemical was used. Further, the defendant notes that the plaintiff used Valor SX on its crop after being informed via facsimile that the defendant did not approve of the use of Valor SX. However, the plaintiff denies that it received any notice from the defendant, via facsimile or otherwise, that Valor SX was not approved for use on the crop or surrounding groundcover. Thus, the Court cannot conclude as a matter of law that the plaintiff breached the original contract through the use of unapproved chemicals.

### c. Breach of Contract Accompanied by a Fraudulent Act

The defendant has also moved for summary judgment on the plaintiff's claim for breach of contract accompanied by a fraudulent act. For such a claim to survive, South Carolina courts have held that "the plaintiff must establish three elements: (1) breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (2002) (citing Harper v. Ethridge, 348 S.E.2d 374 (Ct. App. 1986)). While limited, the Court concludes that the evidence in the record is sufficient to allow the claim to survive summary judgment. The primary evidence of record to support this claim is that the defendant was in possession of certain test results from eleven individual truckloads performed by a company named Microbac. The plaintiff claims that the test results were withheld until this litigation was well-underway, and that such test results indicate that the defendant may have been partially responsible for the contamination of the popcorn

---

[2]It is noted that the use of unapproved agricultural chemicals is unrelated to the issue of Aflatoxin contamination.

crop.  Again, evidence in the record is sufficient to allow this claim to survive summary judgment at this stage in the proceedings.

### d.  Defendant's Counterclaims

As a final matter, the Court concludes after careful consideration of the evidence of record, that the evidence is not sufficient to allow the defendant to recover on its counterclaims as a matter of law.

### Conclusion

For the reasons set forth herein, the defendant's motion for summary judgment is denied. (Doc. #17).

**IT IS SO ORDERED**.

                                              s/ Terry L. Wooten
                                              United States District Judge

December 23, 2009
Florence, South Carolina